# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| THOMAS F. UNDERWOOD, | ) |
| Claimant, | ) |
| vs. | ) Case No. 5:13-cv-192-CLS |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER OF REMAND

Claimant Thomas Underwood commenced this action on January 28, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*,

847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinions of his treating physician, Dr. Thomas Royster, and improperly evaluated his subjective symptoms and credibility.[1] Upon review of the record, the court concludes that the first contention has merit.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (alterations supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the

---

[1] Claimant also makes a passing statement in his brief that the ALJ erred in failing to find him disabled under one of the Listings. *See* doc. no. 13 (claimant's brief), at 7 ("The ALJ erred in finding that Mr. Underwood's diabetes and peripheral neuropathy are not 'severe' enough to meet or medically equal an impairment in Appendix 1, Subpart P, Regulations No. 4."). That conclusory statement is not sufficient to carry claimant's burden of establishing the satisfaction of the listing. *See Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991) ("The burden was Barron's to show that his impairments combined to meet or equal a listed impairment in Appendix 1 of Subpart P . . . .").

decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e). Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Royster, claimant's treating family practitioner, wrote a "To Whom It May Concern" letter on March 23, 2010, stating:

> Mr. Underwood has been under my primary medical care since 1992. He was diagnosed with diabetes in 1997. Over the past several years his disease has progressed to the point that he now uses insulin, both long acting and a sliding scale. He has developed diabetic peripheral neuropathy and has fatigue with chronic pain as a result.
>
> In 2005, Mr. Underwood was diagnosed with malignant melanoma requiring 2 separate operative procedures to remove the cancer. He is under the care of a dermatologist and oncologist as well. He was advised to avoid sunlight due to its harmful affects [*sic*] and he has had to give

up his trained position as a building contractor.

     Mr. Underwood suffers from depression, anxiety, and lack of mental focus at times as a result of his diabetes and melanoma and the disabling effects of them, including his inability to work in his field of training.

     Mr. Underwood is quite compliant with his regimen of treatment and follows his diet religiously. However, his diabetes is progressive and incurable. In my professional opinion, Mr. Underwood should be considered disabled as he is no longer able to perform the functions of his job.[2]

Dr. Royster submitted a second letter on March 18, 2011, stating:

     As a follow-up to my letter dated March 23, 2010 Mr. Underwood's health has continued to decline in several areas, but mostly in the realm of his diabetes. Over the past year, his glucose levels have been very difficult to control despite changes in medication dosages, additions of other medications to his regimen, and more stringent exercise and diet plans. As a result of this, his peripheral neuropathy has become more prominent and he has taken on additional stress due to his worry over his health. Though he continues to work as much as possible, he finds this increasingly more difficult. The stress of not being able to compete in the work place even adds more to the instability of his diabetes. Recently, he was referred to a diabetologist to see if other measures can be taken to improve his diabetes. As a result of that workup, he has been found to have an extremely low vitamin D level due to his inability to get adequate sun exposure (a result of his malignant melanoma). Also he was found to have an elevated measure of inflammation in his coronary arteries which could lead to heart attack or stroke.

     Because this gentleman has to concentrate much of his time and energy towards treatment of his health problems, and because of the way these health problems have affected him physically and psychologically, it is my professional opinion that he should be considered disabled and

---

[2] Tr. 270 (alteration supplied).

4

is no longer able to perform the daily functions of his job.[3]

Dr. Royster also submitted a Functional Assessment (Physical) form on April 19, 2011. He indicated that claimant could stand for thirty minutes at a time, and for two hours total, during an eight-hour work day. He could walk for thirty minutes at a time, and for one hour total, each day. He could sit for thirty minutes at a time, and for five hours total, each day. Claimant would require a sit-stand option, and he would have to lie down for approximately sixty minutes two to three times a week as a result of his hypoglycemia. Claimant could frequently lift up to twenty pounds and occasionally lift up to thirty pounds. He could frequently carry up to five pounds and occasionally carry up to ten pounds. He could frequently push/pull with the left arm and right leg, reach, handle, feel, talk, and hear. He could occasionally push/pull with his right arm and left leg, stoop, kneel, and crouch. He could never climb, balance, or crawl. Those limitations were due to a previous surgery on his right arm for melanoma, and arthritis in his left knee. Claimant could frequently be exposed to vibration, but could only occasionally be exposed to wetness, humidity, or proximity to moving mechanical parts. He could never be exposed to extreme cold or heat, fumes, noxious odors, dusts, mists, gases, poor ventilation, or work in high, exposed places. His color vision and field of vision were unlimited. He could frequently use his far acuity, but could only occasionally use his near acuity, depth perception, and

---

[3] Tr. 74.

accommodation. He could be exposed to moderate noise levels.[4]

The ALJ characterized Dr. Royster's physical assessment form as indicating that "claimant is capable of completing an eight hour workday with certain restrictions."[5] As such, the ALJ accepted the opinion "for the most part as it ws supported by Dr. Royster's treatment records and generally consistent with other medical evidence of record . . . ."[6] She assigned little weight, however, to Dr. Royster's letters of March 2010 and March 2011, stating:

> While the claimant may suffer from peripheral neuropathy, fatigue and chronic pain now, the evidence does not show he was suffering from these symptoms prior to December 31, 2009, the date last insured. Treatment records show the claimant's health was stable, he was active, exercising regularly and responding well to treatment. The claimant was advised to avoid sunlight. However, this condition alone would not preclude him from performing all work activity. There is also no objective evidence that the claimant's health was in decline. The claimant reported no problems to Dr. Gualtieri and said he was doing well overall. Dr. Royster apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to accept most of it as reported. His opinion is quite conclusory and he provided little objective evidence of severity prior to December 31, 2009. Further, since Dr. Royster's opinion is without support from other evidence in the record, it is obviously rendered less persuasive . . . .[7]

The ALJ's findings about Dr. Royster's assessment of claimant's physical limiations are internally inconsitent. The ALJ rejected Dr. Royster's letters because

---

[4] Tr. 339-40.
[5] Tr. 18.
[6] *Id.*
[7] *Id.*

they related to a time period *after* claimant's date last insured of December 31, 2009. That in and of itself was not improper, as each claimant bears the burden of proving disabilty on or before his date last insured. *See* 42 U.S.C. § 423(a) and (c); 20 C.F.R. §§ 404.101, 404.130, and 404.131; *Ware v. Schweiker,* 651 F. 2d 408, 411 n.3 (5th Cir. July 1981).[8]  But, at the same time, the ALJ accepted Dr. Royster's Functional Assessment (Physical) form "for the most part," even though it was dated April 19, 2011, well after the date last insured.  Moreover, the ALJ did not specify which portions of the Functional Assessment she was accepting and which she was rejecting. That is significant, because one limitation noted on the Functional Assessment form was claimant's need to lie down for an hour at a time, two to three days a week, as a result of his hypoglycemia.  The vocational expert testified during the administrative hearing that there were no jobs that would accommodate an employee's need to lie down routinely during the day.[9]  Thus, an individual with a need to lie down two to three times a week would be completely disabled from performing any job.  The ALJ did not include that part of Dr. Royster's assessment in her residual functional capacity finding, and she did not explain why it was omitted.  Perhaps she found the assessment to be unsupported by the evidence, or perhaps it was merely an

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[9] Tr. 55.

unintentional omission. It would not be proper for this court to speculate about the ALJ's reasoning, and without a clear explanation for the ALJ's decision, the decision cannot be adequately reviewed on appeal. Remand is therefore warranted for the ALJ to give further consideration to Dr. Royster's Functional Assessment form, to more clearly state which parts of that assessment were accepted and which were rejected, and to more clearly explain the reasons for rejecting any portions of the assessment.[10]

Based on the foregoing, the decision of the Commissioner is REVERSED, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk of Court is directed to close this file.

DONE this 6th day of March, 2014.

_____
United States District Judge

---

[10] Because remand is warranted on these grounds, the court need not consider claimant's other arguments.